# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:14-CR-321** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **TERRENCE BYRD (1),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Last month, this court resolved the renewed motion to suppress by defendant Terrence Byrd ("Byrd"), following remand of the matter from the United States Supreme Court and the Court of Appeals for the Third Circuit. Specifically, we held that Pennsylvania State Police troopers David Long ("Trooper Long") and Travis Martin ("Trooper Martin") developed probable cause to search Byrd's entire rental vehicle for evidence of criminal activity and, in the alternative, that the good faith exception vitiated application of the exclusionary rule to evidence obtained from the search. Byrd moves for reconsideration of that decision. (Doc. 119).

## I. Factual Background & Procedural History

A thorough recitation of the court's findings of fact and conclusions of law as pertains to Byrd's renewed motion to suppress appears in this court's June 6, 2019 memorandum, familiarity with which is presumed. See United States v. Byrd, No. 1:14-CR-321, 2019 WL 2387190 (M.D. Pa. June 6, 2019). The instant motion for reconsideration challenges the probable cause and good faith exception rationales this court employed in denying Byrd's request to suppress evidence obtained during a traffic stop on September 17, 2014. Byrd maintains that the court made

both factual and legal errors in denying his motion to suppress. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

A party may move for reconsideration in a criminal case. See United States v. Dupree, 617 F.3d 724, 732 (3d Cir. 2010). In both civil and criminal cases, district courts possess inherent power to reconsider interlocutory orders "when it is consonant with justice to do so." United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973); see also State Nat'l Ins. Co. v. County of Camden, 824 F.3d 399, 406 n.14 (3d Cir. 2016). However, a party may not invoke a motion for reconsideration as a means to relitigate matters already resolved or to present new arguments which should have been raised earlier. See Dupree, 617 F.3d at 732-33 (citation omitted); Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231-32 (3d Cir. 1995).

## III. Discussion

Byrd advances three primary arguments in his motion for reconsideration: (1) the court incorrectly relied on or misstated certain factors in its probable cause analysis; (2) the court misapplied certain appellate cases in its probable cause analysis; and (3) the good faith exception is inapplicable to the facts of this case.[1] We first consider together Byrd's challenges to our findings of fact and conclusions of law as to the existence of probable cause. We then turn to his objection to the good faith exception.

---

[1] Byrd does not dispute the court's holding that he did not freely and voluntarily consent to a search of the rental vehicle.

### A. Findings of Fact and Probable Cause

Byrd argues that the court failed to address the portion of his roadside conversation with Trooper Long during which Byrd denied possessing or smoking marijuana that day. (Doc. 119 at 3). There is no question that Byrd initially told the troopers that he "ain't got shit" in the vehicle in response to their question about the presence of illegal drugs, (Def. Ex. 11 at 18:53:02-18:53:10), or that he denied smoking marijuana that day, (id. at 18:53:16-18:53:20).[2] However, neither of these responses warrant reversal of our ruling on probable cause. Byrd's initial denial as to the existence of marijuana in the vehicle does not render unreasonable the troopers' reliance on his subsequent admission to the presence of a blunt.

We likewise disagree with Byrd's contention that Trooper Long lacked probable cause because "he knew there was no marijuana" in the vehicle. (Doc. 119 at 2). Byrd posits that Trooper Long never understood the term "blunt" to mean marijuana because Trooper Long purportedly said "I ain't worried about that" in response to Byrd's admission to the presence of a blunt. (Id.) On the patrol car surveillance video, Trooper Long reacted to Byrd's statement ("I think I got a blunt") by exclaiming "aaah!" (Def. Ex. 11 at 18:53:45-18:53:50). Trooper Martin can be heard making an inaudible comment immediately after Trooper Long's

---

[2] Based on these statements, Byrd asseverates that the court incorrectly found that Byrd admitted to the presence of marijuana. (Doc. 119 at 3 n.2 (citing Byrd, 2019 WL 2387190, at *8)). Our statement that "the troopers relied on Byrd's own admission to the presence of marijuana" is clearly referring to Byrd's admission that there was a blunt in the passenger compartment as discussed in the preceding two sentences of that paragraph, see Byrd, 2019 WL 2387190, at *8, and *not* to Byrd's initial denial of the presence of marijuana in the vehicle.

exclamation, to which Trooper Long retorted "I ain't worried about that" and Byrd responded "okay." (Id. at 18:53:49-18:53:53). Trooper Long then asked Byrd if there was "anything else?" (Id. at 18:53:53-18:53:55). And moments later, just before the troopers began their search of the vehicle, Trooper Long informed Byrd that he "ha[d] probable cause because [Byrd] told [the troopers] what's in there." (Id. at 18:55:10-18:55:50).

We are unconvinced that Trooper Long told Byrd that he was not worried about the blunt specifically; the more plausible explanation is that Trooper Long commented that he was not worried about whatever subject Trooper Martin raised.[3] More importantly, whether probable cause exists is an *objective* determination based on the totality of the circumstances present at the time of the search.[4] See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005). As we noted in our June 6, 2019 memorandum, the troopers reasonably understood Byrd to be using the term "blunt" as slang for marijuana based on the totality of the circumstances. See Byrd, 2019 WL 2387190, at *6 & n.7. Byrd was driving a vehicle in another person's name, exhibited signs of extreme nervousness during the traffic

---

[3] Even if we credited Byrd's proposed version of events, there are conceivable reasons why Trooper Long might tell Byrd that he was not worried about the blunt. For example, the troopers were still seeking Byrd's voluntary consent to search the vehicle, (id. at 18:54:14-18:54:46), and looking to ensure Byrd's ongoing cooperation throughout the duration of the traffic stop. Alternatively, Trooper Long simply may have been expressing greater concern over what may be uncovered in the course of a search, such as larger quantities of drugs or loaded firearms.

[4] For this reason, the fact that the troopers never found marijuana or a Phillies Blunt Cigar in the vehicle, (see Def. Ex. 501 at 1-2; 6/30/15 Tr. 77:13-14, 83:19-21, 108:5-6), is irrelevant to the probable cause determination.

4

stop, and produced a driver's license without a photograph. Id. at *6. The troopers discovered that Byrd had a criminal history involving drugs and an active arrest warrant, and they struggled to ascertain Byrd's identity due to his use of an alias. Id. These facts combined with Byrd's admission to the presence of "a blunt" in the rental vehicle established probable cause to search the vehicle irrespective of Trooper Long's subjective understanding as to the meaning of the term "blunt."

The balance of Byrd's challenges to the court's findings of fact and conclusions of law as to probable cause were raised in his initial briefing and addressed by the court. Byrd avers that the court "credited Trooper Long's claim that the stop was prolonged for almost 45 minutes" over confusion regarding Byrd's identity despite the fact that the troopers supposedly determined his identity early in the traffic stop. (Doc. 119 at 2). *Per contra*, we identified several reasons for the duration of the traffic stop. The troopers discussed Byrd's abnormal behavior, his criminal history, his visible nervousness, and their suspicion that Byrd possessed marijuana in the vehicle. See Byrd, 2019 WL 2387190, at *2. The confusion over Byrd's identity certainly delayed resolution of the traffic stop, id., but Trooper Long also testified that he and Trooper Martin spent time "waiting on confirmation from the [New Jersey] warrant" and waiting for New York authorities to send a picture of Byrd as his interim license lacked a photograph, (6/30/15 Tr. 64:6-13, 65:7-8). And Byrd contributed to the delay by calling Trooper Martin back to the rental vehicle to further discuss his interim driver's license and provide more information about his move to Pittsburgh. Byrd, 2019 WL 2387190, at *2; (see also Def. Ex. 11 at 18:23:30-18:28:30).

5

To the extent Byrd is arguing that the duration of the traffic stop was unreasonable, we reject that contention. In the court's initial suppression ruling, Judge William W. Caldwell held that the duration of the traffic stop was reasonable based on a variety of factors that together constituted reasonable suspicion. See United States v. Byrd, 2015 WL 5038455, at *3-4 (M.D. Pa. Aug. 26, 2015), aff'd, 679 F. App'x 146 (3d Cir. 2017), vacated and remanded on other grounds *sub nom.*, Byrd v. United States, 584 U.S. __, 138 S. Ct. 1518 (2018). Our independent review of the record revealed no clear factual errors in Judge Caldwell's findings of fact undergirding his determination that the troopers reasonably extended the traffic stop. See Byrd, 2019 WL 2387190, at *6.

Byrd posits that the court "made Byrd's assertion of a constitutional right into a factor that can be used to take away his right to privacy." (Doc. 119 at 5). In essence, Byrd avers that by offering to retrieve the blunt for the troopers, he was preserving his right to be free from an unreasonable search of his rental vehicle. (See id. 4-5). Throughout the duration of the traffic stop, Byrd was free to invoke his right to remain silent and to withhold consent to search the vehicle, which he did so effectively. See Byrd, 2019 WL 2387190, at *4. The troopers' reliance on Byrd's voluntary admission to the presence of contraband in the rental vehicle did not contravene his Fourth Amendment rights. Byrd also disagrees with the court's rejection of his arguments in favor of limiting the troopers' search to the passenger compartment of the rental vehicle. (Doc. 119 at 6-7 (citing cases)). These arguments were fully briefed by the parties and thoughtfully considered by the court in the June 6, 2019 memorandum. Byrd has not identified a clear error of law in our prior

decision, and we decline to revisit these settled issues. For all of these reasons, we will deny Byrd's motion to reconsider our findings of fact and our conclusions of law as to the existence of probable cause.

### B. Good Faith Exception

This court determined that the good faith exception provided an alternate basis for denying Byrd's motion to suppress. We held that because the troopers relied in good faith on then-existing Third Circuit precedent—that an unauthorized driver of a rental vehicle lacked a legitimate expectation of privacy therein—the evidence obtained from the search of the rental vehicle was not subject to the exclusionary rule. Byrd, 2019 WL 2387190, at *8 (quoting United States v. Kennedy, 638 F.3d 159, 165 (3d Cir. 2011), abrogated by, Byrd, 138 S. Ct. 1518). On remand from the Supreme Court, the Third Circuit initially affirmed Byrd's conviction based on the good faith exception. See United States v. Byrd, No. 16-1509, Doc. 3113003851 at 4-6 (3d Cir. Aug. 8, 2018). However, Byrd correctly points out that the Third Circuit subsequently vacated this opinion on reconsideration. See United States v. Byrd, 742 F. App'x 587, 588 n.2 (3d Cir. 2018).

We conclude that the good faith exception still applies to the matter *sub judice*, albeit for a different reason. The good faith exception applies not only when an officer reasonably relies on binding appellate precedent, but also when an officer acts "upon an objectively reasonable good faith belief in the legality of their conduct." United States v. Vasquez-Algarin, 821 F.3d 467, 483 (3d Cir. 2016) (quoting United States v. Katzin, 769 F.3d 163, 182 (3d Cir. 2014) (*en banc*)). The second inquiry focuses on "'whether a reasonably well trained officer would have

known that the search was illegal' in light of [the] constellation of circumstances." Katzin, 769 F.3d at 182 (citing United States v. Leon, 468 U.S. 897, 922 (1984)). The Supreme Court has recognized that an admission of criminal activity carries indicia of credibility sufficient to establish probable cause to search. See United States v. Harris, 403 U.S. 573, 583 (1971).

The troopers reasonably suspected that Byrd was engaged in criminal activity. Byrd had an active warrant, a criminal record which included drug convictions, and a known alias. Byrd, 2019 WL 2387190, at *6. He presented a non-traditional driver's license to the troopers, exhibited signs of extreme nervousness, and was driving a rental vehicle in another person's name. Id. As the troopers questioned Byrd about their suspicion that he was engaged in criminal activity, Byrd admitted that his rental vehicle contained an illegal drug. Id. at *6 & n.7. And on the patrol car's surveillance video, Trooper Long stated that he had probable cause to search the vehicle based on Byrd's admission to the presence of a controlled substance. Id. at *3. Against this factual landscape, we conclude that Troopers Long and Martin had an objectively reasonable, good faith belief that their conduct complied with the strictures of the Fourth Amendment. We will amend the portion of our June 6, 2019 memorandum applying the good faith exception in accordance with the above analysis.

## IV. **Conclusion**

For the foregoing reasons, the court will deny Byrd's motion (Doc. 119) for reconsideration. An appropriate order shall issue.

                                                     /S/ CHRISTOPHER C. CONNER
                                                   Christopher C. Conner, Chief Judge
                                                   United States District Court
                                                   Middle District of Pennsylvania

Dated:    August 2, 2019